Birchard, J.
The first assignment of error goes to the sufficiency of the declaration which it is said cannot be maintained, mainly, because, if the note in question was given up by reason of the fraudulent inducement, without full payment, there is a plain remedy, by action of assumpsit upon the note, and that, in such a case, no special action upon the case can be *503 resorted to. Of this opinion are two of the members of this Court, while the other members hold that, notwithstanding the action of' assumpsit might be maintained, the special action upon the case will also lie; that the defrauded party may cbunt directly upon the fraud and avoid any notice of offset; that he may have his action for the deceit in this case, without returning the property, as well as he might have an action for the note after an offer to return that for which he gave it up; and this upon general principles. The Court being equally divided in opinion, the objection to the declaration fails, and the decisions of the Court of Common Pleas, in overruling the demurrer and disallowing the motion in arrest of judgment, are sustained.
By the first bill of exceptions, it appears an objection was taken to the admission of the testimony of D. A. Wareham, and an error is assigned, upon this exception. The witness stated, that he was at Edwards’ store, on the 17th of June, endeavoring to collect a debt of $600, in goods, when Edwards told him he was as poor as a church mouse; that Owen was there on the same day making his arrangement to receive, out of the store, goods on the note set forth in the declaration; that he did not communicate the conversation to him, that on the same day, and before he received his goods of Edwards, the clerk of Edwards then being in the store and in the hearing of Edwards, told him he had better take goods, &c., for it was the only chance ■— that if he waited till after court he would not give fifty cents for the claim,' &c.
The next bill of exceptions on which errors are assigned, presents no principle distinguishable from the above, and both may be considered together. It is proper to remark, that they do not set forth what particular ground of objection was taken to the evidence, and we are, therefore, under the necessity of considering whether, in any aspect of the case, such evidence was competent for any purpose. Several things were necessary to sustain the plaintiff’s right of action, and whatever tended to prove any one of those several matters, was competent for *504 that purpose. ■ It is clear,-that what was said to others, wheth- ' er'communicated to Owen or not," was incompetent to prove :the -fraudulent misrepresentations alledged to have, been made directly to him. But upon the hypothesis. thatthose-'charges of the, declaration-were specifically proved by,other evidence, might not ...proof of this description tend to throw some light, upon the question, whether they were;made in good faith' or' with "a .fraudulent design, .and:.-with, the intention that, they -.-should deceiv.e ?. It was as important .for Owen to satisfy the •jury of,'the existence of a fraudulent purpose in.-making the false'representations, as of their falsity,-or that he.was thereby defrauded. ' What passes i'n men’s minds can, in general;' only be gathered from their acts, and the attending’ circumstances, from what they were, doing, causing and requiring to be done.. As to’what was said by the clerk, we know not that it was objected to. ■ But is it to -be supposed that a clerk in a store, his .employer af home and'daily supervising and directing him, will represent his principal as insolvent and in .a few days likely to be unable to pay fifty cents on a .$600 note,, without instruction to do so — and that his principal will retain him after such representation, make.similar ones in his presence, profit by them'at the expense of his creditor, and all with honest and fair intentions ? The necessary and legal inference from' such conduct is, that the,' servant, thus acting in concert with the principal, but obeys the behests of .the master, an.d that the latter intends and sanctions the commission of -the -imposition which so profits him.
Again — in this case,-, that part qí the' evidence which went to show that goods were received out of the store, was competent, for it was incumbent upon Owen to satisfy the jury that he. received on' that day the goods, as averred in the pleadings. We are not prepared to- say this evidence was- incorrectly admitted.
The third bill of exceptions was taken to the admission of the testimony of R, C. -Schenck and another, and the fourth to the admission of sundry other witnesses, and errors are assigned *505 upon these. The specific ground of objection is not stated in either of these bills of exception, and, as has been said in remarking upon their predecessors, if the proof objected to tended to support the issue in any respect, it was not error to admit it. Mr. Schenck testified to sundry conversations of Edwards with him, as the agent of sundry of his creditors — that he said they must take what he offered them or they would get nothing. The witness narrates the manner of his compromising, the value of his property, and the price at which he induced creditors to take it. The other witness proved, that about that time Edwards was generally representing himself insolvent, and that he became generally so reputed about Dayton, and that the report, contrary to the truth, was believed to be well founded. Now, all this proof, connected with the fact that he made, compromises of his debts greatly below their amount, admitting that he was then able to pay the full amount of each claim, would seem to furnish some evidence that he knew the falsity of the representations made by him to Owen, and which Owen says deceived him. Admitting that there was proof that those representations were made, and falsely made, one would hardly need more to bring his mind to the conclusion that the design was fraudulent. If it tended to support that part of the issue, it was proper to suffer it to go to the jury, whether, by itself and unaided, it was sufficient or not.
Upon the fifth bill of exceptions, two errors are assigned—
First: In refusing to charge the jury, as requested.
Second: In the instructions given.
The Court were asked to instruct the jury that, to entitle Owen to recover, they must be satisfied that Edwards represented to him that he was insolvent, and unable to pay him and his other creditors, with intent to deceive and defraud him; that the representations were false and fraudulent, that they were relied on by him, and were the means by which he had been deceived and had sustained the damage complained of; and that representations made to others, and by them communicated to Owen, would not sustain the action.
*506 We think that this instruction should have been given. It is what the law'required, and, to us, seems to have been all that the case required. The residue of the instructions requested, present questions that could not legitimately arise in the case, because they were foreign to the issue. It was not, therefore, error to refuse them.
In the instructions given we find no fault, save in the last clause, in these words: “Proof that Edwards made the false 4 and fraudulent representations imputed to him, to other cred-4 itors, with intent to defraud his creditors generally, by indu- ‘ cing them to compound their claims at less than their value, £ and that the false representations so made to others came to the 4 knowledge of Owen and induced him to compound his debt 4 at less than its value, will sustain the declaration,” and Edwards would be liable to make good the difference between the value of the note and the property given in its discharge, alt ho’ hé did not warrant the property and made no false representation as to its quality. To this there are objections. Proof that false representations were made to Owen’s neighbors does not sustain an averment that they were made to himself. Parties ■must recover according to their allegata and probata. Both ■must correspond. Owen could not alledge that Edwards had deceived him, by a misstatement made to him, and in which he had placed confidence, when none was made to him. The falsehoods imposed upon his neighbors was not a matter of his. He made no case of that kind in his declaration, and he could not be justified in relying upon what was said to them. Indeed, all that was thus said had nothing to do with this case, except so far as it tended tó show with what intent Edwards made false statements to him. directly, and' upon which he did, and had a right to rely. The Court erred in this, and the judgment must be reversed.